UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

QUINCY DEAN NORTON, SR.,

          Petitioner,

    v.

RANDY GROUNDS, Warden,

          Respondent.

_____/

No. C 14-4484 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

    Petitioner seeks federal habeas relief from his state convictions.  For the reasons set forth below, the petition for such relief is DENIED.

**BACKGROUND**

    In 2010, a San Mateo County Superior Court jury convicted petitioner, on re-trial, of first degree murder.[1]  He was sentenced to a term of 26 years to life in state prison.  He sought, but was denied, relief in the state courts.  This federal habeas petition followed.

    Evidence presented at the second trial showed that on July 22, 2006, petitioner stabbed his wife Tamika to death.  Such evidence included the testimony of the couple's children Quincy Jr. and Deon.  On July 22 at roughly 6:30am, Quincy awoke to the sound of his mother screaming her sons' names.  When he looked into his mother's bedroom, he saw Tamika lying on the bed while petitioner stood over her and held her down by the wrists. Quincy became upset and petitioner told him to go back to bed.  Deon, also drawn to the

---

[1] The first jury found petitioner guilty in May 2008.  (Ans., Ex. A, Vol. 1 at 14.)  A year later, in May 2009, the trial court granted his motion for a new trial on grounds that DNA evidence had not been presented.  (*Id.*, Ex. A, Vol. 1 at 37–39; Mem. of P. & A. at 18.)

United States District Court
For the Northern District of California

sound of his mother's screaming, saw Quincy staring into Tamika's bedroom and petitioner shutting the bedroom door.  (Earlier that morning, Deon heard his parents arguing and petitioner yelling "fuck" and "bitch.")  When Quincy tried to open it, Deon heard the door being locked and then went back to his room.  The arguing stopped and he heard "bumping and thumping" which sounded like "someone falling to the floor."  A few minutes later, petitioner entered Deon's room and told him to get dressed.  When Deon asked whether he could use the bathroom in his parents' bedroom, petitioner said no.  He gathered his sons and his daughter Jasmine and drove off in Tamika's car.  (Ans., Ex. C at 3–4.)

Other evidence implicated petitioner.  Cell phone records showed that on July 22, 2006 two calls were made from petitioner's cell phone which used the cell tower closest to Tamika's residence.  (*Id.*, Ex. B, Vol. 12 at 2083–84.)  These calls were placed around 6:30am, the time his sons heard their mother's screams.  (*Id.*)

It was determined that Tamika, whose corpse was found on the floor of her bedroom, died from multiple stab wounds to her neck and torso.  Cuts on her hands appeared to be defensive wounds "consistent with a struggle."  (*Id.*, Ex. C at 4.)

In his defense at trial, petitioner offered evidence that his girlfriend, Anitra Johnson, killed Tamika during a jealous rage.  (*Id.*, Ex. C at 4.)  Defense counsel presented evidence that Anitra had a propensity for violence.  (*Id.*, Ex. B, Vol. 15 at 2678–89 and 2702–05, )  Evidence that Anitra was a "minor contributor" to DNA material found on Tamika's kitchen counter and on the handle of the murder weapon was also presented.  (*Id.*, Vol. 14 at 2607–12.)

As grounds for federal habeas relief, petitioner claims (1) trial counsel rendered ineffective assistance; (2) the prosecutor committed misconduct; (3) the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights; and (4) there was cumulative error.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id*. § 2254(d).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id*. at 409.

## DISCUSSION

## I.  Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance of counsel for failing to (A) investigate and present preliminary hearing evidence; (B) object to the prosecutor's comments; (C) present an expert witness to testify about child psychology; (D) present impeachment evidence; and (E) move to recuse the trial judge.  These claims

were presented only to the state supreme court by way of a habeas petition, which was summarily denied.  (Ans., Exs. D, E and F.)  When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This review is not de novo.  "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687–68 (1984), "not whether it deviated from best practices or most common custom," *Richter*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

The standards of 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so."  *Id.* at 105 (quotation marks and citations omitted).  "The question [under § 2254(d)] is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## A.    Failure to Present Preliminary Hearing Testimony

In 2003, in an unrelated proceeding, petitioner was charged with beating Tamika.  At a 2004 preliminary hearing on the subsequent charges, Tamika and Anitra Johnson testified. Petitioner claims defense counsel rendered ineffective assistance when she failed to "read and investigate" the women's testimony and chose instead to focus on the DNA evidence. (Pet. at 6, 9.)

Defense counsel moved to exclude the 2004 hearing testimony on grounds that it was more prejudicial than probative.  She contended that the prosecution wanted to use the evidence "to argue to the jury that not only did [petitioner] beat [Tamika] up in 2003" and that he "orchestrated this whole scheme of two women coming to his defense, taking an oath to tell the truth in court, and lying in order to protect him."  (Ans., Ex. B, Vol. 5 at 922.)  If the prosecution wanted to introduce evidence regarding the assault, Tamika's statement to her mother Charene[2] that petitioner had beaten her was sufficient.  (*Id.* at 930–31.)  The trial court agreed and excluded the preliminary hearing testimony.  (*Id.* at 938.)

A reviewing federal habeas court must accord tactical decisions by trial counsel considerable deference.  "[C]ourts may not indulge 'post hoc rationalizations' for counsel's decision-making that contradicts the available evidence of counsel's actions . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"  *Richter*, 562 U.S. at 109 (citations omitted).  Tactical decisions of trial counsel deserve deference when:  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances.

---

[2] This is the correct spelling.  (Ans., Ex. B, Vol. 7 at 1159.)  It appears as "Charlene" in the state appellate court opinion.  (*Id.*, Ex. C at 2.)

1    *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

2        Habeas relief is not warranted here.  First, the record flatly contradicts petitioner's

3    contention that defense counsel failed to review the testimony.  Defense counsel's familiarity

4    with the testimony is clear from the record of her motion to exclude.  Second, counsel's

5    decision was a reasonable tactical decision made after her investigation into the preliminary

6    hearing testimony.  By moving to exclude the evidence, counsel sought to restrict the amount

7    of information the jury would hear about petitioner assaulting a woman he later killed,

8    evidence which surely would have not aided his defense.  Petitioner counters that the

9    preliminary hearing testimony would reveal that Tamika and Johnson had a physical fight.

10   Counsel likely thought that any probative value of this evidence would be outweighed by the

11   consequent admission of information about petitioner's attack on Tamika.[3]  It was reasonable

12   for counsel to decline to use such evidence.

13       Counsel's decision to focus instead on the DNA evidence connecting Johnson to the

14   murder weapon was a reasonable tactical decision.  As noted above, Johnson was a "minor

15   contributor" to DNA material found on Tamika's kitchen counter and on the knife handle.

16   Defense counsel also presented evidence of Johnson's history of violence, her romantic

17   relationship with petitioner, and her jealousy of Tamika.  Presenting Anitra, rather than

18   petitioner, as the killer would tend to exculpate him.  How this strategy operated to his

19   detriment, let alone how his constitutional rights were violated or how counsel's actions

20   resulted in prejudice, has not been shown.

21

22

23       [3] Petitioner claims the hearing testimony would have contradicted the prosecution's

24   assertion that he assaulted Tamika in 2003 because at the hearing Tamika largely recanted her
     allegations.  (Pet. at 7.)  Even if this is so, counsel reasonably supposed again that presenting

25   such testimony, even to counter the prosecution's assertions, would be more harmful than
     helpful.  Counsel likely did not want to add to the details provided by Charene's testimony at

26   trial, which provided a full description of Tamika's 2003 injuries and the attack that caused them
     (Ans., Ex. B, Vol. 7 at 1165–75), and the testimony that petitioner expressed remorse for the

27   attack to Charene (*id.* at 1175–76), Tamika's father William (*id.* at 1235–37), and Tamika's
     cousin Michelle Ollis (*id.*, Vol. 8 at 1272–73).

28

Upon an independent review of the record, the Court concludes that the state court's rejection of these claims was not objectively unreasonable.  Also, petitioner has not shown there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Richter*, 562 U.S. at 112.  The state court's decision is therefore entitled to AEDPA deference.  Accordingly, this claim is DENIED.

**B.     Failure to Object to Prosecutor's Comments**

Petitioner claims defense counsel rendered ineffective assistance by failing to object to the prosecutor's comments in various instances.  First, he asserts defense counsel failed to object to the prosecutor's alleged misstatements of various witnesses' testimony or other evidence.  (Pet. at 32, 34.)  A review of the record shows that the prosecutor's comments were either fair restatements of the testimony, made outside the presence of the jury, or were of small importance.  Some of the more salient instances are discussed below.

He alleges, for instance, that the prosecutor called him a "liar."  (Pet. at 32.)  The prosecutor actually said that petitioner was "actively lying about where he was" on the day of Tamika's murder.  (Ans., Ex. B, Vol. 16 at 2911.)  This statement was a reasonable inference the prosecutor made after citing supporting evidence, which was described in the factual background section of this order.  *See United States v. Garcia-Guizar*, 160 F.3d 511, 520 (9th Cir. 1998) (a prosecutor may refer to a defendant as a liar if commenting on the evidence and asking the jury to draw reasonable inferences).  Because this was a reasonable comment based on evidence, any objection counsel would have made would likely have been denied. It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

In another instance, during his closing argument the prosecutor said, "I respectfully suggest to you the reason Tamika Norton didn't scream more . . . was that she was afraid this over here [i.e., petitioner] was going to kill her kids.  And that was not unreasonable given his conduct in the past.  And frankly, I would respectfully submit to you, we're darn lucky he didn't."  (Ans., Ex. B, Vol. 16 at 2911.)  Petitioner contends defense counsel should have

objected to this statement, which he regards as prejudicial.  It was a reasonable tactical

decision for counsel not to object, however.  Even if such an objection would have been

sustained, counsel and the court's response to the objection would have called attention to

circumstances of the murder that inculpated petitioner.  Furthermore, her refusal to object did

not result in prejudice, as detailed below.

In another instance, petitioner contends that "[t]he prosecutor argued to the jury that

petitioner had a right not to testify, but then he said, 'But that does not mean that it's your job

all of a sudden to make up some kind of a story for him to permit [defense counsel] Ms.

Maguire to do so.'"  (Pet. at 33.)  Petitioner claims counsel should have objected to this

statement, which infringed on his Fifth Amendment right not to testify.

Habeas relief is not warranted here, as a larger quotation from the record shows:

> When you begin your deliberations, and as you continue your deliberations, I
> ask only this.  Please focus on the evidence that has been presented to you.
> The defendant — and you will be instructed and it's absolutely right, the
> defendant in a criminal case has an absolute right not to testify.  You may not
> consider that for any purpose.  I don't want you to do it.  The Court will tell
> you not to do it.
>
> But that does not mean that it's your job all of a sudden to make up some kind
> of a story for him or to permit Ms. Maguire to do so.
>
> You're supposed to work on the evidence and not facts that folks get to make
> up as they go along.

(Ans., Ex. B, Vol. 17 at 2917.)

As this quotation shows, the prosecutor's admonition to not make up a story in the

absence of evidence, but rather to base conclusions on the evidence presented, is consistent

with the jury's instructions.  He also carefully and repeatedly stated that petitioner had the

right not to testify and the jury was to adhere to that instruction strictly.  Any objection by

counsel would likely have been rejected, and therefore it was a reasonable tactical decision

for her not to object.  *See Juan H.*, 408 F.3d at 1273.  Also, an objection by counsel may well

have called even more attention to the fact that petitioner did not testify in his defense,

1   attention that would have further implicated his Fifth Amendment rights.[4]

2        In another instance, petitioner alleges the prosecutor "made derogatory remarks

3   towards defense counsel, calling the trial counsel's defense stupid, silly, and awful," and

4   accused defense counsel of having "spun" a story about Anitra Johnson ("It's fanciful.  If it

5   were a movie, you'd walk out").[5]  (Pet. at 33.)  Petitioner claims counsel should have

6   objected to these comments.

7        While a prosecutor may not gratuitously attack a defense counsel's integrity and

8   veracity, *see Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983), he may comment on the

9   state of the evidence and whether it supports the defense's arguments, *see Dubria v. Smith*,

10  224 F.3d 995 (9th Cir. 2000) (prosecutor may properly reply to the arguments made by

11  defense counsel).

12       Habeas relief is not warranted here.  The record shows that the comments were a reply

13  to the defense's arguments, not an attack on the integrity or veracity of defense counsel.

14  (Ans., Ex. B, Vol. 17 at 2855.)

15       According to petitioner, the prosecutor stated that "[t]he reason [petitioner] is sitting

16  over there is because he's guilty, not because someone dislikes him." (Pet. at 33.)  He

17  contends defense counsel should have objected to this.

18       Habeas relief is not warranted here.  The record shows that this statement was the

19  conclusion to the prosecutor's reply to defense arguments that he manipulated witnesses and

20  misstated evidence.  While it was improper for the prosecutor to express his personal opinion

21  of the defendant's guilt, *United States v. Moreland*, 622 F.3d 1147, 1161 (9th Cir. 2010), it

22

23       [4] To the extent petitioner raises a claim under *Griffin v. California*, 380 U.S. 609, 615
    (1965), it is DENIED.  Griffin held that a defendant's privilege against self-incrimination is
24  violated when the jury is asked to draw an adverse inference from a defendant's silence, or to
    treat the defendant's silence as substantive evidence of guilt.  There was no *Griffin* error here or
25  at any other time.  The prosecutor was not asking the jury to draw an adverse inference from the
    fact petitioner was not testifying.  Rather, the prosecutor firmly told the jurors not to do so.  It
26  was reasonable for the state court to reject any implicit *Griffin* claim.

27       [5] "[S]illy" and "awful" do no appear on the page petitioner cites, though "absurd,"
    "ridiculous," and "stupid" do.  (Ans., Ex. B, Vol. 17 at 2855.)

28

was appropriate to reply to defense arguments.  Because the comments were largely such a reply, defense counsel made a reasonable tactical decision not to object. Also, as discussed below, even if counsel should have objected, no prejudice resulted from not doing so.

Petitioner claims the prosecutor misstated the evidence when he said that no one knew where petitioner spent the night.  (Pet. at 33.)  Habeas relief is not warranted here. As noted above in the factual summary, a review of the record shows that cell phone records and witness testimony plausibly established petitioner was near Tamika's residence on the night of the murder, or that his whereabouts were at times unknown.  It was both reasonable and not prejudicial for defense counsel to forgo making an objection.  *See Juan H.*, 408 F.3d at 1273.

During her examination of petitioner's sons, defense counsel sat at her client's side. In his closing argument, the prosecutor characterized this as an attempt to manipulate the boys, who would be inclined to look at their close-by father during her questions, into not testifying.  Petitioner contends counsel should have objected to this.  Because this was a fair interpretation of events witnessed by the jury, however, any objection by defense counsel would likely have been denied.  *See Juan H.*, 408 F.3d at 1273.

Petitioner claims defense counsel should have objected to the prosecutor vouching for prosecution witnesses.  (Pet. at 35.)  In particular, he objects to the prosecutor's statement about his forensic expert:  "He's been doing this for 30 years.  He made the informed decisions on the stuff he was going to do and the stuff he was not.  And he made no bones about it.  Folks, it's why we train them.  It's why we pay them." (Ans., Ex. B, Vol. 16 at 2905.)

Improper vouching for the credibility of a witness occurs when the prosecutor places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness's testimony.  *United States v. Young*, 470 U.S. 1, 7 n.3, 11–12 (1985).  Habeas relief is not warranted here.  It was reasonable for the state court to reject such a statement as an incidence of vouching.  The comment told of the expert's

qualifications, trustworthiness, and why he is testifying.  A review of the record regarding the other alleged incidents of vouching shows no indication that the prosecutor put the prestige of the government behind any of these witnesses or suggests that there was information not presented to the jury.  *See Juan H.*, 408 F.3d at 1273.

Also, in none of these instances has petitioner shown that prejudice occurred.  The evidence against petitioner was strong.  He had a history of assaulting Tamika; his sons provided highly convincing evidence (hearing their parents argue and their mother's screams; seeing petitioner holding Tamika down on the bed by the wrists; petitioner forbidding his son from using the bathroom attached to the bedroom in which Tamika was last seen alive; Tamika's corpse found in the room in which she was last seen with petitioner; a history of a tempestuous and violent relationship between petitioner and Tamika); and cell phone records placed him near Tamika's residence on the night of the killing.

Upon an independent review of the record, the Court concludes that the state court's rejection of these claims was not objectively unreasonable.  Also, petitioner has not shown there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard.  *Richter*, 562 U.S. at 112.  The state court's decision is therefore entitled to AEDPA deference.  Accordingly, this claim is DENIED.

## C.     Failure to Present Expert Witness

Petitioner claims defense counsel rendered ineffective assistance when she failed to present expert testimony on child psychology and coercive interview techniques.  (Pet. at 31.)  According to petitioner, an expert could have testified that his sons' recollections were either not reliable or had been altered by the prosecutor.  (*Id.*)  Petitioner cites as support the testimony of child psychology experts who testified at his first trial.  (*Id.*)  This is unavailing.  Their testimony, as summarized by petitioner, relates mostly to general theories about a child's ability to remember and how that ability can be affected by interrogators.  It does not speak to whether his sons' recollections were faulty or altered.  (*Id.*)  Petitioner also alleges that some of the expert witness testimony related specifically to his sons.  But he provides

only conclusory summaries of such testimony.  For example, the experts allegedly testified at the first trial that his sons' statements changed over time and that those changes were caused by "misleading and biased interview techniques."  (*Id.*)  He does not specify in his petition, however, what those techniques were or how the allegedly changed testimony and recollections affected his trial.  Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice, the necessary showing to sustain an ineffective assistance claim.  *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997).

Furthermore, the jury in petitioner's first trial found such testimony unpersuasive and found him guilty.  Counsel in petitioner's second trial may well have chosen not to present such expert witnesses for the sound tactical reason that it likely would not have benefitted petitioner's defense.

Upon an independent review of the record, the Court concludes that the state court's rejection of these claims was not objectively unreasonable.  Also, petitioner has not shown there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard.  *Richter*, 562 U.S. at 112.  The state court's decision is therefore entitled to AEDPA deference.  Accordingly, this claim is DENIED.

### D.   Failure to Present Impeachment Evidence

Petitioner claims counsel was ineffective for failing to impeach certain witnesses.  These claims, only the most salient of which is discussed here, lack merit.

Tamika's mother, Charene, testified at trial that she visited Tamika after the 2003 assault.  She observed that Tamika's jaw was out of alignment and that she could not completely close her mouth.  (Ans., Ex. B, Vol. 7 at 1165–66.)  Petitioner asserts that Tamika's jaw was not out of alignment when she later sought medical care, as medical records indicate.  His habeas claim is that defense counsel was ineffective in failing to present Tamika's medical records to impeach Charene.

1    Habeas relief is not warranted here.  First, the Court does not have the medical records

2 and therefore cannot evaluate the merits of petitioner's assertion that presentation of such

3 records would have impeached Charene.  Second, even if the records showed what petitioner

4 asserts they show, counsel's decision not to present such evidence was a reasonable tactical

5 decision.  She may well not have wanted to draw further attention to circumstances of the

6 2003 assault or to attack the credibility of a murder victim's mother.  Third, counsel may

7 have been concerned that it would be an undue consumption of court time to focus on a

8 single disputed detail of an attack that occurred seven years before trial.[6]  Fourth, even if

9 counsel's performance was deficient, no prejudice ensued, as discussed above.

10    Upon an independent review of the record, the Court concludes that the state court's

11 rejection of these claims was not objectively unreasonable.  Also, petitioner has not shown

12 there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard.

13 *Richter*, 562 U.S. at 112.  The state court's decision is therefore entitled to AEDPA

14 deference.  Accordingly, this claim is DENIED.

15        **E.        Failing to Move to Recuse the Trial Judge**

16    The same judge, Craig Parsons, presided over both of petitioner's trials, and granted

17 petitioner's motion for a new trial.  (Ans., Ex. B, Vol. 18 at 3024–25.)  Petitioner claims

18 counsel was ineffective for failing to move to recuse Parsons from presiding over the second

19 trial on grounds that he was "bias[ed] and unfair."  (Pet. at 40.)  As proof of this, he cites   (1)

20 the trial court's grudging approval of his motion for a new trial; and (2) his refusal to admit

21 Johnson's testimony from the new trial hearing.  (*Id.* at 40–41.)[7]

22 _____

23    [6] This same reasoning defeats petitioner's claim that counsel should have impeached
   Tamika's sister Nicole with evidence she had poked her boyfriend with a sharp object.  Counsel
24 may have been concerned that such a tactic would unnecessarily consume court time to focus
   on an incident not relevant to Nicole's credibility.

25    [7] Many of petitioner's examples of alleged improprieties occurred during his first trial,
26 not the trial that led to the convictions at issue here, however.  (Pet. at 39.)  Counsel at the
   second trial cannot be held ineffective for failing to object to acts that occurred in the prior trial.

27

28                                                                    No. C 14-4484 RS (PR)

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge, *see In re Murchison*, 349 U.S. 133, 136 (1955); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1990), because a "biased decisionmaker [is] constitutionally unacceptable," *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  In order to obtain federal habeas relief on a claim that a judge was not impartial, a federal court must be convinced that a particular influence, "under a realistic appraisal of psychological tendencies and human weakness," poses "such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."  *Id.*  Federal habeas relief is therefore limited to those instances where there is proof of actual bias, or of a possible temptation so severe that one might presume an actual, substantial incentive to be biased.  *See Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1380 (7th Cir. 1994) (en banc).

Habeas relief was unavailable in *Del Vecchio*, which presented rather exceptional circumstances.  In that case, the state trial judge was <u>not</u> required to disqualify himself even though (1) he had been involved fourteen years previously in the prosecution of the defendant for another murder; (2) there was a contention he had a personal stake in affirming the validity of the evidence concerning the prior murder because that evidence was offered in the present sentencing proceeding; and (3) he felt personal responsibility for the present murder because of a decision he had made that lead to the defendant's early release from prison for the prior murder.  *Id.* at 1379–80.

Habeas relief is not warranted here.  First, however grudging Judge Parsons was in granting the motion for a new trial, the motion was granted.  How a ruling in petitioner's favor shows bias or prejudice is unclear.  Failing to move for recusal on such grounds was a reasonable tactical decision.  Second, counsel's decision not to move to recuse did not implicate any basic trial rights, such as testifying, taking an appeal or pleading guilty.  Also, even if counsel had moved to disqualify the trial judge, petitioner has not shown that such a motion, which would have been based almost entirely on adverse evidentiary rulings by the

court, would have been successful. Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky v. U.S.*, 510 U.S. 540, 555–56 (1994). Furthermore, as stated above, federal habeas relief is available when there is proof of actual bias, or of a possible temptation so severe that one might presume an actual, substantial incentive to be biased. *Del Vecchio*, 31 F.3d at 1380. If habeas relief was not available under the extraordinary circumstances in *Del Vecchio*, it certainly is not available here.

Upon an independent review of the record, the Court concludes that the state court's rejection of these claims was not objectively unreasonable. Also, petitioner has not shown there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Richter*, 562 U.S. at 112. The state court's decision is therefore entitled to AEDPA deference. Accordingly, this claim is DENIED.

## II.    Alleged Prosecutorial Misconduct

Petitioner claims the prosecutor committed misconduct by (A) intimidating a witness, Anitra Johnson; (B) coercing testimony from his children; (C) presenting evidence regarding partner battering; (D) disregarding court rulings; and (E) making improper statements during closing argument. A defendant's due process rights are violated when a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). Under *Darden*, the first issue is whether the prosecutor's conduct was improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). It is "the fairness of the trial, not the culpability of the prosecutor" that is the touchstone of the due process analysis. *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

With one exception, these claims were presented only to the state supreme court by way of a habeas petition, which was summarily denied. (Ans., Exs. D, E and F.) Consequently, the Court will conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado*, 223 F.3d at 976.

### A.    Alleged Intimidation of Anitra Johnson

Petitioner claims that the prosecutor committed misconduct when he dissuaded Anitra Johnson from testifying.  (Pet. at 44.)  The background of this claim is as follows.  Johnson testified at the 2007 preliminary hearing related to petitioner's first trial, where she was represented by counsel.  The prosecutor granted Johnson immunity for her testimony at the 2007 preliminary hearing, whereupon the court ordered her to testify.  (Ans. Ex. H at 95–97.) She testified that she had a "romantic relationship" with petitioner in the two years before Tamika's death.  (*Id.* at 99–100.)  She also stated she had had "heated" arguments with Tamika on the phone and in person, and that the two had had one physical fight.  (*Id.* at 119.)

She also testified at the new trial motion hearing in 2009.  (*Id.*, Ex. A at 31.)  At the hearing, Johnson raised her allegations of intimidation and harassment.  At the hearing, Johnson's attorney Mike Devoy denied that the prosecutor told him that he would prosecute Johnson, according to petitioner.  (Pet. at 45.)  The trial court found that the prosecutor did not "dissuade Ms. Johnson from testifying."  (Ans., Ex. A, Vol. 1 at 39.)

At the second trial, she invoked her Fifth Amendment rights and refused to testify. She asserts in her declaration that she did not testify because the prosecutor browbeat her when she had testified previously, had harassed her and her family, and told her attorney he would prosecute her for perjury.  (Ans., Ex. A, Vol. 5 at 1252–57.)

"Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses."  *Williams v. Woodford*, 384 F.3d 567, 601–02 (9th Cir. 2002) (citation omitted). "The prosecution's conduct must amount to a substantial interference with the defense witness's free and unhampered determination to testify before the conduct violates the defendant's right to due process."  *Id.* at 602 (citations omitted).

Habeas relief is not warranted here.  First, most of the events she describes in her declaration occurred before petitioner's 2009 hearing on a motion for a new trial.  As to those

No. C 14-4484 RS (PR)
ORDER DENYING PETITION

instances, this Court must presume as correct the state court's factual determination that the prosecutor did not dissuade Johnson from testifying unless petitioner can rebut the determination by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner has made no such rebuttal.  He simply repeats the information contained in Johnson's declaration, information which the trial court found insufficient.

Second, Johnson lists only two instances of alleged harassment that occurred after the new trial motion hearing.  One of which was the prosecutor serving her mother with a subpoena.  (Ans., Ex. A, Vol. 5 at 1253.)  The second was the prosecutor emailing articles to Johnson's sister with a message that Johnson was "involved" and that petitioner was blaming her for the killing.  (*Id.*)  Neither incident constitutes harassment or intimidation.  There is no evidence that the prosecutor subpoenaed Johnson's mother to intimidate or harass.  The record shows only that a subpoena was issued.  Also, though it might have been improper to contact Johnson's sister (if such an act occurred), the Court cannot say that it was unreasonable for the state court to reject petitioner's claim that the prosecutor committed misconduct.  Such an alleged act does not rise to the level of intimidation (e.g., threatening to prosecute) necessary for a finding of misconduct.

Third, Johnson may have refused to testify out of a fear that she might incriminate herself by doing so.  As noted above, petitioner's defense at trial is that Johnson, not petitioner, killed Tamika.  To support this, the defense presented evidence of a hostile relationship between the two women and the presence of Johnson's DNA on the murder weapon and at Tamika's house.  On this additional basis, it was reasonable for the state court to reject petitioner's claim.

Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief.  This claim is DENIED.

1

**B.     Coerced Testimony**

2      Petitioner claims the prosecutor coerced false testimony from his children Quincy Jr.

3  and Deon.  (Pet. at 50.)  He bases his coercion claim on alleged inconsistencies in their

4  statements before and after they were interviewed by the police and prosecutor.  (*Id.* at

5  50–51.)  Recordings of the three police interviews were played at trial.  The prosecutor's

6  interviews of the boys were not recorded.

7      To prevail on this sort of claim, a petitioner must show that "the prosecution knew, or

8  should have known," that the testimony was false.  *United States v. Agurs*, 427 U.S. 97, 103

9  (1976).  It is insufficient to show mere inconsistencies.  Prosecutors will not be held

10  accountable for discrepancies in testimony where there is no evidence from which to infer

11  prosecutorial misconduct.  *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995)

12  (no evidence of prosecutorial misconduct where discrepancies in testimony could as easily

13  flow from errors in recollection as from lies).

14      Habeas relief is not warranted here.  The record does not support petitioner's claim

15  that the prosecutor manipulated the boys or coerced them into testifying to fit his theory of

16  the case, or that he knowingly presented perjured testimony.  All of the instances at trial may

17  have flown as easily from errors in recollection.  For example, at trial, Quincy testified that

18  because he "was nervous" he did not tell police during the first two interviews that he had

19  seen petitioner holding his mother down.  (Ans., Ex. B, Vol. 9 at 1602.)  He then testified

20  that in fact he had seen petitioner holding his mother down.  (*Id.*)  Attempting to impeach

21  him, defense counsel asserted on cross-examination that Quincy never told the police this

22  detail.  (*Id.* at 1638.)  He responded that he had.  (*Id.*)  During a break in trial, Quincy

23  reviewed the transcript of his first two interviews with police.  (*Id.* at 1657–58).  On redirect,

24  with his memory refreshed, Quincy admitted he had not told the police he had seen petitioner

25  holding his mother down.  (*Id.*)  Far from showing coercion or manipulation, these facts

26  show that the prosecutor allowed Quincy to correct his testimony, which in the end favored

27

28

the defense.[8]

The other examples petitioner cites are not persuasive, nor in any way show that the state court was unreasonable in denying his claims. There is no indication that the prosecutor presented perjured testimony or otherwise committed misconduct. Furthermore, the prosecutor admitted to the jury that there were inconsistencies in the boys' testimony. Such discrepancies were "understandable," he said because they were "just boys." (Ans., Ex. B, Vol. 16 at 2894.)

Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief. This claim is DENIED.

## C. Presentation of Expert Witness

Petitioner claims the prosecutor's presentation of expert testimony on partner battering was improper. (Pet. at 68.) He allegedly "misused" the evidence "to bolster the credibility of the government's fact [*sic*] witnesses by mirroring their version of events." (*Id.*) By this he means the hypothetical questions the prosecutor asked the expert witness, Rhonda Leipelt.

The state appellate court disagreed, and rejected this claim:

> The evidence that was presented showed [petitioner] abused Tamika physically and emotionally over a long period of time. But the evidence also showed that despite this abuse, Tamika stayed with [petitioner]. The trial court reasonably could conclude that the jurors might be confused by why a woman would stay with a man who abused her, and that they would benefit from hearing an expert explain that such conduct is predictable and is consistent with the conduct of others who have experienced similar abuse. We conclude the trial court did not abuse its discretion when it admitted the evidence in question.

(Ans., Ex. C at 14.) The expert witness's testimony gave general information on battered

---

[8] Quincy also mistakenly described what Tamika was wearing. When shown the actual garment by the prosecutor, he admitted subsequently that his prior testimony was in error. (Ans., Ex. B, Vol. 9 at 1623; 1655–60.) Such an incident does not show coercion or that the prosecutor presented false testimony. Rather, it was merely a mistake regarding one rather inconsequential detail about a crime that had occurred many years before.

women and their behavior.  It was not about Tamika, about whose "behaviors or her characteristics" the expert witness admitted she had "no familiarity."  (*Id.*, Ex. B, Vol. 3 at 2350.)

It is "well-established . . . that expert testimony concerning an ultimate issue is not per se improper."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).  Although "[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence . . . an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact."  *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990).  The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).

Habeas relief is not warranted here.  First, it was reasonable to admit the testimony, which discussed the general behavior of battered women, not Tamika's behavior specifically.  As such, this testimony, as the state appellate court stated, would clear up any juror confusion on the topic.  Second, Leipelt's testimony did not relate to the ultimate issue of petitioner's guilt and she gave no opinion on that matter.  Third, the prosecutor did not ask her or the jury to infer petitioner's guilt from Leipelt's testimony.  So, even if his questions to her mirrored some of the facts of Tamika's abuse, such questions were hypotheticals posed to a witness unfamiliar with her.  The prosecutor's tying together the testimony and the facts of the case in his closing argument was a permissible use of properly admitted evidence.  Also, petitioner has not shown prejudice, as discussed above.

The state court's rejection of this claim was reasonable and therefore is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

### D.    Disregarding Court Rulings

Petitioner claims the prosecutor committed misconduct by ignoring trial court rulings.  A review of the record shows that the prosecutor made reasonable comments based on the

evidence, or that the alleged instances were of small importance.  Furthermore, petitioner has not shown that he was prejudiced, as discussed above.

Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief.  This claim is DENIED.

### E.    Closing Argument

Petitioner raises various claims regarding the prosecutor's closing argument.  For instance, he claims the prosecutor "inject[ed] personal knowledge" and became an unsworn witness when he elicited testimony that he had spent time with the boys walking dogs or flying kites.  (Pet. at 54–55.)  Habeas relief is not warranted on this claim.  Because such evidence was elicited from the boys when they were on the stand, the prosecutor was not an unsworn witness.  The Court reads petitioner's claim that the prosecutor "injected personal knowledge" as a repetition of his unsworn witness claim.

Habeas relief also is not warranted on his remaining allegations.  His claims that the prosecutor vouched for his witnesses were addressed and denied above.  Petitioner's remaining claims that the prosecutor misstated evidence, presented unsupported theories, made improper comments about witnesses or defense theories, or inflamed the passions of the jury are not supported by the record.  The record shows that the prosecutor's comments were fair evaluations of the evidence in the record or appropriate responses to defense arguments, or that petitioner's description of the prosecutor's alleged missteps is inaccurate.

Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief.  This claim is DENIED.

### III.    Claims Against the Trial Court

Petitioner claims the trial court violated his constitutional rights by (A) intimidating

Anitra Johnson; (B) excluding evidence of third-party culpability; (C) admitting evidence of prior bad acts; and (D) giving improper jury instructions.

### A.    Anitra Johnson

Petitioner claims the trial court intimidated Anitra Johnson during the proceedings of the first trial so severely that she invoked her Fifth Amendment rights and refused to testify at the second.  He thus interfered with petitioner's right to present a defense, a defense that Johnson herself murdered Tamika.  (Pet. at 70–71.)

This claim was presented to the state supreme court only on collateral review. Consequently, the Court will conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable.  *See Delgado*, 223 F.3d at 976.

Habeas relief is not warranted here.  First, petitioner's assertions are not in accord with the information provided by Johnson's declaration.  She asserts she did not testify because she feared being prosecuted for perjury.  (Ans., Ex. A at 1252.)  Neither Judge Parsons nor his actions is cited as a cause.  At worst, Parsons made her feel "as if I were doing something wrong" when he asked her three times whether she wanted to testify.  (*Id.* at 125.)

Second, the actions of the prosecutor and Johnson's attorney are not relevant to whether the <u>court</u> intimidated Johnson.  Third, a review of the record of the second trial, including Johnson's declaration, shows no intimidation.  Fourth, Johnson, whose DNA was found on the murder weapon, may well have refused to testify because the defense attempted to portray her as Tamika's murderer, rather than because of any act by Parsons or anyone else.  In fact, as discussion of petitioner's next claim shows, defense counsel sought to admit evidence of Johnson's violent past.

Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief.  This claim is DENIED.

1

2          **B.      Exclusion of Evidence of Third-Party Culpability**

3          Petitioner claims the trial court violated his due process right to present a defense

4   when it excluded evidence that Anitra Johnson had a violent past.  (Pet. at 75.)  The specific

5   evidence showed that she had committed violent acts against Venus Murcer, petitioner's

6   former girlfriend, and Ralph Brister, Johnson's former boyfriend.  The state appellate court

7   rejected this claim, concluding that the evidence was properly excluded.  (Ans., Ex. C at

8   8–9.)

9          The excluded evidence is as follows.  In 2005, after a heated argument, Johnson

10  threatened Murcer with a knife, which never touched her.[9]  Petitioner pulled Johnson away,

11  who in turn pulled away from him and in doing so cut him.  She then cried and said to

12  petitioner "This is all your fault."  (Ans., Ex. B, Vol. 13 at 2247–48.)  During a pretrial

13  hearing on the admission of this evidence, Murcer testified that Johnson "didn't really want

14  to fight me" and was just "saving face."  (*Id.* at 2241, 2248–49.)  "It was all about

15  [petitioner].  It wasn't even about me . . . [Johnson] started crying and broke down.  They

16  left."  (*Id.* at 2249.)

17         The trial court found the "incident does not meet the definition of sufficient motive

18  . . . to gain admissibility":

19             I simply fail to see the jealousy emotion surfacing in this incident.  I don't
               know what triggered the incident.  But it doesn't appear to be jealousy to the
20             Court . . . Anitra apparently, in a fit of anger, came over and instigated the
               incident.  And it was practically over before it had started, with [petitioner]
21             intervening.

22  (*Id.* at 2273–74.)  The state appellate court, which described the evidence as "murky at best,"

23  found its exclusion proper.  "The trial court considering this evidence reasonably could

24  conclude it did not show that when [petitioner] and Johnson fought about his relationship

25

26         _____

27             [9] Murcer had known Johnson for years and had never known Johnson to be hostile to her
        before this incident.  (Ans., Ex. B, Vol. 13 at 2243–44, 2270–1.)  Petitioner may have fathered
        a child with Murcer.  (*Id.* at 2242, 2271.)

28

1    with other women, her response was to 'lash out at the woman that is the subject of the

2    three-way relationship that is causing her angst.'" (*Id.*, Ex. C at 8.)

3        The state appellate court also rejected the claims related to the exclusion of the

4    evidence presented by Ralph Brister, who had a relationship with Johnson from 1990 to 1998

5    and had a child with her. (Ans., Ex. B, Vol. 14 at 2411.) "The incidents that [Ralph] Brister

6    described were even further afield," according to the state appellate court. (*Id.*, Ex. C at 8.)

7    In 1996, after seeing him hug another woman, Johnson tried to run him over with her car,

8    which she attempted to do again in 1998 in another fit of anger. (*Id.* at 6, 7.) In 1998 or

9    1999, Johnson, angry over a "water fight" she had had with Brister earlier that day, fired

10   several gun shots at him. (*Id.* at 6; Ex. B, Vol. 14 at 2423.) In 1999, she attacked Brister and

11   scratched his face after seeing a hickey on his neck. (*Id.*, Ex. C at 8.) In another incident,

12   she yelled "[T]ell that bitch to come outside" at the mother of a woman with whom Johnson

13   believed Brister had fathered a child. (*Id.* at 7.) The woman's father talked to Brister, who

14   told Johnson to step into her car. (*Id.*, Ex. B, Vol. 14 at 2431–32.) The pair drove off

15   without further incident. (*Id.* at 2432.)

16       The couple's arguments often occurred after one or both had been drinking. (Ans.,

17   Ex. B, Vol. 14 at 2434, 2439.) Their fights were often about money, his failure to be a

18   responsible father to a child he had had with Johnson, and her jealousy over his spending

19   time with other women. (*Id.* at 2439–40, 2447, 2450.) Brister once hit Johnson after she had

20   grabbed him. (*Id.* at 2434.) Consequently he was charged with domestic violence. (*Id.*)

21       In excluding the evidence, the trial court rejected defense counsel's contention that it

22   was proof of Johnson's motive to kill Tamika. "Wouldn't that have been the appropriate

23   motive of a female against a male partner, as evidenced by Anitra Johnson's acts against the

24   man and her partner, Brister, as opposed to Anitra Johnson attacking any of the women?"

25   (*Id.*, Ex. B, Vol. 14 at 2459.) "If you want to equate it to the Norton case, it seems she

26   should have gone after [petitioner] rather than Tamika Norton." (*Id.* at 2460.) The state

27   appellate court concluded that the trial court properly excluded the Murcer and Brister

28

evidence, and denied petitioner's claims on both state and federal grounds.  (Ans., Ex. C at 9.)

State and federal rulemakers have broad discretion in excluding evidence from trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  This discretion is limited by a defendant's constitutional rights to due process and "a meaningful opportunity to present a complete defense." *Id.* (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Furthermore, this Court recognizes that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326.  The Ninth Circuit has repeatedly found that state courts have acted reasonably in excluding unreliable or insubstantial evidence of third-party culpability.  *See Phillips v. Herndon*, 730 F.3d 773, 776–78 (9th Cir. 2013); *Christian v. Frank*, 595 F.3d 1076, 1085-86 (9th Cir. 2010); and *Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999).

Habeas relief is not warranted here.  The state court reasonably excluded the Brister evidence as lacking probative value.  At best it showed Johnson's violent tendencies toward a man she believed had wronged her, not toward a woman.  Also, it showed nothing about Johnson's feelings about Tamika, and the incidents were remote in time from the murder.

The exclusion of the Murcer evidence was also reasonable.  While it may have had slight probative value because it involved Johnson threatening a woman with a knife, Johnson never touched Murcer and finally directed her anger at petitioner.  Murcer herself strongly believed that the incident was really about petitioner, not her.  The Court cannot say it was unreasonable to exclude such evidence.

The state appellate court's rejection of the claims was reasonable and therefore is entitled to AEDPA deference.  Petitioner has not met his burden to show that there was no reasonable basis for the state court to deny relief.  *Richter*, 562 U.S. at 98.  Petitioner's claims are DENIED.

1

### C.    Admission of Prior Bad Act Evidence

The trial court admitted evidence of petitioner's prior acts of domestic violence.  (Pet. at 80.)  Petitioner claims admission of this evidence was prejudicial and constituted impermissible character or propensity evidence.[10]  (*Id.*)  The state appellate court rejected this claim on both state and federal grounds.  (Ans., Ex. C at 9–12.)

Habeas relief is not warranted here because no remediable federal constitutional violation occurred.  First, a petitioner's due process rights concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this issue as an "open question."  *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006).  Second, even if the evidence were prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Third, any claim that the state court erred in admitting the evidence under state law is not remediable on federal habeas review.  The state appellate court's ruling that the evidence was properly admitted under state law binds this federal habeas court.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The state appellate court's rejection of the claims was reasonable and therefore is entitled to AEDPA deference.  Petitioner has not met his burden to show that there was no reasonable basis for the state court to deny relief.  *Richter*, 562 U.S. at 98.  Petitioner's claims are DENIED.

### D.    Jury Instructions

Petitioner claims the trial court's instructions on (1) uncharged perpetrators; (2) third-party guilt; and (3) the defendant's right to remain silent violated his right to due process.  To

---

[10] Petitioner adds a related claim, this one regarding the admission of alleged hearsay. Charene Mack, Tamika's mother, testified about a phone call she received from Tamika in June 2006 in which Tamika told Charene about an angry visit from petitioner.  (Ans., Ex. B, Vol. 7 1178–81.)  Even if this evidence was admitted improperly, habeas relief is not warranted. Petitioner has not shown prejudice (as noted above) or shown that the state court's denial of this claim was unreasonable.

obtain federal collateral relief for errors in the jury charge, a petitioner must show the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

### 1.    Instruction on Uncharged Perpetrators

The jury was instructed not to speculate whether another person involved in the crime will be prosecuted. (Ans., Ex. A, Vol. 4 at 1129; CALCRIM No. 373 ("Other perpetrator").) Petitioner contends this instruction may have caused the jurors to disregard his defense that a third-party (Anitra Johnson) murdered Tamika (Pet. at 90–91).[11]

Habeas relief is not warranted here. CALCRIM No. 373 forbids the jury from considering whether another person will be <u>prosecuted</u>, not whether another person is <u>responsible</u> for the crime. Such an instruction may well have aided petitioner. It allowed the jury to consider the possibility that Tamika was murdered by Johnson, even though she was not charged as a co-defendant. Without the instruction, the jury may have read her not being charged as a sign she was not responsible for the murder, or that the evidence against her was weak. The jury likely gave the defense theory greater weight because of the instruction.

Because it is unclear whether the instruction helped or hurt petitioner, the Court cannot say that the state court's rejection of petitioner's claim was unreasonable. Therefore,

---

[11] Petitioner also contends the prosecutor misled the jury as to the meaning of this instruction. (Pet. at 90.) Habeas relief is not warranted here. The jury was instructed that it must follow the trial court's instructions and to disregard the attorneys' comments on the law that are in conflict with the court's instructions. (Ans., Ex. A, Vol. 4 at 1110.) The Court must presume that the jurors followed the instructions and applied the proper legal standard. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. The claim is DENIED.

1   upon an independent review of the record, the Court concludes that the state court's denial of

2   the claim was not objectively unreasonable and therefore is entitled to AEDPA deference.

3   Also, petitioner has not shown that there was no reasonable basis for the state court to deny

4   relief.  This claim is DENIED.

5         **2.**      **Instruction on Third-Party Guilt**

6         Petitioner claims the trial court's modification of the third-party guilt instruction

7   impermissibly lightened the prosecution's burden of proof.  (Pet. at 91.)  He objects in

8   particular to the trial court striking the part of the instruction that it was not necessary for

9   petitioner to prove his innocence or to prove that another person committed the crime.  (Ans.,

10  Ex. A, Vol. 4 at 1148–49.)

11        This claim was presented to the state supreme court only on collateral review.

12  Consequently, the Court will conduct an independent review of the record to determine

13  whether the state-court decision is objectively unreasonable.  *See Delgado*, 223 F.3d at 976.

14        The Due Process Clause requires the prosecution to prove every element charged in a

15  criminal offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).  If

16  the jury is not properly instructed that a defendant is presumed innocent until proven guilty

17  beyond a reasonable doubt, the defendant has been deprived of due process.  *See Middleton*

18  *v. McNeil*, 541 U.S. 433, 436 (2004).  Any jury instruction that "reduce[s] the level of proof

19  necessary for the Government to carry its burden . . . is plainly inconsistent with the

20  constitutionally rooted presumption of innocence."  *Cool v. United States*, 409 U.S. 100, 104

21  (1972).

22        Habeas relief is not warranted here.  The modified instruction (Ans., Ex. A at

23  1148–49) meets *Winship*'s requirements.  Not only does it not reduce the prosecutor's

24  burden, it explicitly reinforces the prosecutor's obligation to prove petitioner's guilt beyond a

25  reasonable doubt.  The instruction did not, as petitioner contends, forbid the jury from

26  considering third-party culpability.  Rather, it said that he did not have the obligation to

27  prove such culpability or his innocence.  It was the state's obligation to prove his guilt, as the

28

1    instructions stated.

2         Upon an independent review of the record, the Court concludes that the state court's

3    denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA

4    deference.  Also, petitioner has not shown that there was no reasonable basis for the state

5    court to deny relief.  This claim is DENIED.

6         **3.     Instruction on the Right to Remain Silent**

7         Petitioner claims that the trial court's use of CALCRIM Nos. 359 ("Corpus Delicti:

8    Independent Evidence of a Charged Crime") and 362 ("Consciousness of Guilt:  False

9    Statements") "infringed on petitioner's Fifth Amendment right to remain silent."  (Pet. at 91.)

10   In truth, the claim relates to the prosecutor's statements about petitioner, not to whether the

11   instruction violated his right to due process.  Accordingly, the claim regarding these jury

12   instructions is DENIED as facially insufficient.  Petitioner's claim regarding the prosecutor is

13   addressed above.

14   **IV.   Cumulative Error**

15        Petitioner claims that the cumulative effect of all the errors at trial violated his right to

16   due process.  (Pet. at 93.)  The state appellate court rejected this claim on the merits.  (Ans.,

17   Ex. C at 18.)

18        In some cases, although no single trial error is sufficiently prejudicial to warrant

19   reversal, the cumulative effect of several errors may still prejudice a defendant so much that

20   his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir.

21   2003).  Where there is no single constitutional error existing, nothing can accumulate to the

22   level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir.

23   2002).

24        Habeas relief is not warranted here.  First, petitioner's claim is entirely conclusory.

25   He fails to name the specific errors he believes combined to violate his due process right to a

26   fair trial.  Also, he fails to show specifically how the combination of the unnamed trial errors

27   resulted in an unfair trial.  Rather than posing general allegations, a federal habeas petition

28

No. C 14-4484 RS (PR)
ORDER DENYING PETITION

"is expected to state facts that point to a real possibility of constitutional error." *Mayle v. Felix,* 545 U.S. 644, 655 (2005) (internal quotation marks and citation omitted). Conclusory allegations, such as those, are not sufficient.

Second, the Court has reviewed petitioner's allegations. None of them point to the real possibility of any constitutional error, either singly or in combination. Furthermore, the evidence of petitioner's guilt was strong.

Furthermore, the state appellate court's rejection of this claim was reasonable and therefore is entitled to AEDPA deference. Petitioner has not met his burden to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Petitioner's claims are DENIED.

### CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED. The Clerk shall enter judgment in favor of respondent, and close the file.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

**IT IS SO ORDERED.**

DATED: April 15, 2016

RICHARD SEEBORG
United States District Judge